FILED & JUDGMENT ENTERED
Steven T. Salata

Aug  17  2015

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

Laura T. Beyer
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| IN RE: | Chapter 11 |
|---|---|
| AT-NET SERVICES-CHARLOTTE, INC. | Case No. 14-32047 |
| Debtor. | |

**ORDER DENYING DEBTOR'S MOTION FOR DETERMINATION OF
INCONSEQUENTIAL VALUE PURSUANT TO 11 U.S.C. § 1111(b)(1)(B)(i)**

This cause came before the Court on July 20, 2015 for hearing on *Debtor's Motion for Determination of Inconsequential Value Pursuant to 11 U.S.C. § 1111(b)(1)(B)(i)* [Doc. 167] (the "Motion"). The Motion is supported by the *Debtor's Brief in Support of Motion for Determination of Inconsequential Value Pursuant to 11 U.S.C. § 1111(b)(1)(B)(i)* [Doc. 170]. In opposition to the Motion, PNC Bank, National Association ("PNC") filed a *Response to Debtor's Motion for Determination of Inconsequential Value Pursuant to 11 U.S.C. § 1111(b)(1)(B)(i)* [Doc. 169]. Richard S. Wright, Esq. appeared at the hearing on behalf of the Debtor. Rory D. Whelehan, Esq. appeared on behalf of PNC.

Having held a hearing on the Motion and based on its review of the record in this matter, the submissions of the parties, the arguments of counsel, and the relevant legal authority, the Court finds and concludes as follows:

**FINDINGS OF FACT**

1. AT-NET Services – Charlotte, Inc. ("Debtor") is a technology consulting firm with its principal place of business in Charlotte, North Carolina.

2. On December 8, 2014 (the "Petition Date"), Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Debtor continues in possession of its properties and the management of its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.[1]

3. PNC is a secured creditor of Debtor with a total filed claim in the amount of $3,256,020.67.

4. PNC has a first priority security interest in Debtor's pre-petition accounts receivable and inventory,[2] except inventory held by Debtor on the Petition Date the purchase of which was financed by GE Commercial Distribution Finance Corporation (the "Collateral").

5. Debtor and PNC have stipulated that the value of the Collateral is $432,575.00. Accordingly, PNC is undersecured.

6. On May 20, 2015, the Court entered its *Order Extending Time to Make Election Under Section 1111(b) of the Bankruptcy Code* [Doc. 128], which extended the deadline for PNC to make an election under section 1111(b) until ten days after entry of a final order approving Debtor's disclosure statement.

---

[1] Unless otherwise stated, all statutory citations are to the United States Bankruptcy Code, Title 11 of the United States Code.

[2] Pursuant to the Court's *Final Order Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. §§ 361 and 363* [Doc. 111] (the "Cash Collateral Order"), to the extent Debtor uses Cash Collateral (as defined in the Cash Collateral Order), PNC has a replacement lien upon "all post-petition assets of the Debtor of the same character and type, to the same extent and validity as the liens and encumbrances of [PNC] attached to the Debtor's assets pre-petition." *Id.* ¶ 7.

7.	Debtor filed its *Second Amended Joint Plan of Reorganization* [Doc. 146] (the "Plan") and *Approved Joint Disclosure Statement* [Doc. 147] (the "Disclosure Statement") on June 26, 2015.

8.	The Plan states the following with respect to the election available to PNC under section 1111(b):

> If a secured Creditor timely makes this election, the Debtors will request a determination by the Court prior to the Confirmation Hearing that the Creditor's interest in the subject collateral is "of inconsequential value." Such a determination will void the Creditor's election pursuant to section 1111(b)(1)(B)(i) of the Bankruptcy Code.

[Plan, § 11.11.]

9.	The Plan further provides that if (a) PNC makes the election pursuant to section 1111(b)(2) and (b) the Court determines that PNC's interest in the Collateral is *not* "of inconsequential value," then Debtor proposes the following treatment of PNC's secured claim:

> (a)	Treatment of PNC's Allowed Secured Claim: This Claim shall be treated as a secured obligation of the Reorganized Debtor in the amount of $3,256,021, less any payments made by the Debtors to PNC during the Chapter 11 Cases. Annual payments on account of PNC's Claim shall begin in December of 2016 and shall be made in December of each year thereafter until paid in full, on the following terms:

| Collateral Value | Annual Payments | Number of Years | Interest Rate | Net Present Value of Payments | Net Present Value as % of Collateral Value |
|---|---|---|---|---|---|
| $432,575 | $21,706.81 | 150 | 5% | $433,848.31 | 100% |

> PNC shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to section 1129(b)(2)(A)(i)(I) of the Bankruptcy Code until its Allowed Claim is satisfied as set forth herein.
> 
> …
> 
> Finally, in the event that the Court disapproves the foregoing treatment for the Claim of a secured Creditor that has taken the section 1111(b) election, the

3

>Debtors will surrender and assign the applicable Collateral, valued as of the Petition Date, to such Creditor within 30 days following entry of the Confirmation Order in full satisfaction of its Allowed Secured Claim. Any resulting Allowed Unsecured Deficiency Claim will be treated as set forth in Class 4 (as to PNC) or Class 5 (as to GE). Again, the electing Creditor shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to section 1129(b)(2)(A)(i)(I) of the Bankruptcy Code until its collateral is surrendered as set forth herein.

[Plan, § 11.11.]

10. The Court entered an order approving the Disclosure Statement on June 30, 2015.

11. Pursuant to the Court's May 20, 2015 Order, PNC timely filed its *Notice of Section 1111(b) Election* [Doc. 162] on July 10, 2015.

12. Debtor filed the Motion, seeking an order determining that PNC's interest in property of the estate is "of inconsequential value" for the purposes of section 1111(b)(1)(B)(i).

## CONCLUSIONS OF LAW

The sole issue before the Court is whether PNC's interest is "of inconsequential value" for the purposes of section 1111(b)(1)(B)(i). Section 1111(b)(2) permits an undersecured creditor to elect to have its entire claim treated as secured. However, section 1111(b)(1)(B)(i) prohibits a "class of claims" from making the election if "the interest on account of such claims of the holders of such claims in such property is of inconsequential value."

The Bankruptcy Code does not define "inconsequential value."

**A.    Debtor's Position**

Debtor argues that, to determine whether PNC's lien is "of inconsequential value" under section 1111(b)(1)(B)(i), the Court must consider the "fair and equitable" plan confirmation requirements of section 1129(b)(2). Debtor cites to *In re Wandler*, 77 B.R. 728 (Bankr. D.N.D. 1987), as support for this proposition.

In *Wandler*, a secured creditor with a claim of $394,000 objected to confirmation of the debtors' plan and attempted to exercise the section 1111(b) election. *Id.* at 731. The creditor's collateral consisted of personal property with a value of approximately $15,000, which represented approximately four percent of the creditor's total claim. *Id.*

The court ultimately held that the secured creditor's lien was of inconsequential value compared to the secured creditor's total claim. The court reasoned that "when a claim cannot be paid in full, either amortized annually or in a lump sum payment at the end of a specified period of time (i.e. thirty to forty years), without exceeding the present value of the collateral, the creditor's claim is probably of inconsequential value." *Id.* at 733. The *Wandler* court essentially incorporated the requirements of section 1129(b)(2)(A)(i)(II) into its analysis by referring to "present value."

Section 1129(b)(2)(A)(i)(II) provides that for a plan to be fair and equitable with respect to a class of secured claims, the plan must (among other things) provide that a secured claimant "receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property."

Because the debtors in *Wandler* could not, "within a reasonable life of a plan," make payments to the secured creditor in the amount of its total claim with a present value of the secured creditor's lien amount, the court held that the secured creditor's lien was "of inconsequential value." *Id.*

Debtor argues that, under the methodology utilized in *Wandler*, PNC's lien is of inconsequential value because Debtor cannot satisfy the requirements of section 1129(b)(2)(A)(i)(II) over a term of 30 to 40 years or less.  *See Wandler*, 77 B.R. at 733

5

(suggesting that "thirty to forty years" would be a "reasonable life of a plan"). For instance, if PNC is permitted to make the 1111(b) election, the Plan proposes to pay PNC's claim over 150 years to provide PNC a stream of payments roughly equal to the stipulated value of PNC's collateral. [Plan, § 11.11.][3]

The *Wandler* court also noted that section 1111(b) was adopted in the wake of *In re Pine Gate Associates*, 2 B.C.D. 1478 (N.D. Ga. 1976), where an undersecured, nonrecourse lender was cashed out in a reorganization plan during a depressed market for the reduced value of its real estate collateral and denied a deficiency claim because its loan was nonrecourse. Thus, the *Wandler* court noted that the "real value of a section 1111(b) election is where the collateral appreciates in value and the debtor defaults under the plan." *Id.* at 732 (citing *In re Southern Missouri Towing Service, Inc.*, 35 B.R. 313, 314 (Bankr. W.D. Mo.1983)).

Debtor notes that, unlike real estate collateral that will presumably appreciate in value, the Collateral is personal property that will depreciate in value. Accordingly, Debtor argues that section 1111(b) is not intended to address the situation presented in this case.

B. **PNC's Position**

PNC argues that, based on the plain meaning of section 1111(b)(1)(B)(i), the Court should compare the value of PNC's lien to the value of the Collateral to determine if its interest is "of inconsequential value." PNC relies, in large part, on *In re McGarey*, 529 B.R. 277 (D. Ariz. 2015).

In *McGarey*, the secured creditor had a total claim amount of $2,335,638.44. *Id.* at 279. The secured creditor had a judgment lien that attached to all of the debtors' real property and

---

[3] PNC argues that 11 U.S.C. § 1129(b)(2)(A)(i)(II) does not require the stream of payments to a secured creditor to "equal" the current value of the secured claim. Instead, the statute provides that such payments must have a value, "as of the effective date of the plan, of at least the value" of the secured claim. Accordingly, there is no express statutory prohibition on paying the secured creditor faster or more to satisfy the requirements of 11 U.S.C. § 1129(b)(2)(A)(i)(II).

certain distributional corporate interests owned by the debtors. *Id.* However, *because of senior liens*, the value of the secured creditor's lien was $80,000 (approximately 3.5% of the total claim). *Id.* at 280.

The debtors argued that the bankruptcy court should apply the *Wandler* methodology for determining inconsequential value by comparing the value of the creditor's lien to the amount of its total claim. *Id.* at 281. Although the bankruptcy court noted that "inconsequential value" does not mean "no value," the bankruptcy court refused to follow *Wandler* and held that the creditor's lien was not inconsequential. *Id.*

On appeal to the district court, the debtors argued that the bankruptcy court erred by refusing to follow *Wandler*. Specifically, the debtors argued that comparing lien value to the amount of the total claim prevents the section 1111(b) election from rendering plans unconfirmable due to 1129(b)(2)(A)(i)(II)'s requirement that a secured creditor receive the net present value of its secured claim: "debtors insist that § 1111(b) and the confirmation standards in § 1129 are inextricably linked and that the *Wandler* approach takes this into account by ensuring that a § 1111(b) election does not result in an unconfirmable plan." *Id.* at 283.

The district court rejected this argument and the *Wandler* methodology. The district court concluded solely from the statute itself that section 1111(b) requires comparison of the lien value to the asset value:

> 'Interest, as used in § 1111(b)(1)(B)(i), means the value of the security in which the creditor has a claim.' *Baxley,* 72 B.R. at 197. 'Such property' means the asset that secures the creditor's claim. Thus, in order to determine "inconsequential value", Section 1111(b) directs that we compare the lien value to the asset value. Nothing in Section 1111(b) suggests that it would be appropriate to compare the lien value to the total value of the creditor's claim. The *Wandler* court's approach for determining 'inconsequential value' is contrary to the plain language of § 1111(b), and the bankruptcy court did not err in deciding not to follow *Wandler*.

*McGarey*, 529 B.R. at 284.

7

As noted by *McGarey*, PNC argues that the *Wandler* methodology is inconsistent with the plain language of the statute.

In addition, PNC notes that Google defines "inconsequential" as "not important or significant." *Google*, http://www.google.com/#=inconsequential (last visited July 19, 2015).[4] PNC argues that, even compared to its total claim, the value of PNC's lien is not "not important or significant." The parties have stipulated that the value of the Collateral is $432,575.00, or approximately 13% of PNC's total claim. By contrast, in *Wandler*, the secured creditor's lien amount was only 4% of its total claim. 77 B.R. at 733.

### C.   PNC's Lien Is Not of Inconsequential Value

Like the district court in *McGarey*, the Court is not persuaded that the inconsequential value analysis requires consideration of the requirements of section 1129(b). Had Congress intended inconsequential value to be determined by analyzing whether the debtor can satisfy the requirements of section 1129(b) in light of the secured creditor's section 1111(b) election, it would have said so in section 1111(b) or elsewhere in the Bankruptcy Code.

Accordingly, the Court disagrees with the methodology employed by *Wandler*. The plain language of section 1111(b)(1)(B)(i) requires the Court to compare the value of PNC's lien with the value of the Collateral. *See also In re Rosage*, 82 B.R. 389, 390 (Bankr. W.D. Pa. 1987) ("[The] court focuses on the value of the property to which the lien attaches, not on the total claim.").

Because there are no higher priority liens encumbering the Collateral, PNC's lien value is the entire value of the Collateral. Accordingly, PNC's lien is not "of inconsequential value" as a matter of law.

---

[4] The court notes that more traditional sources define "inconsequential" similarly to Google. See, e.g., THE AMERICAN HERITAGE DICTIONARY (2d college ed. 1982) (defining "inconsequential" as "[w]ithout consequence; lacking importance; petty").

8

Similarly, although the Court agrees with Debtor that the operation of section 1111(b) appears out of place with respect to depreciating personal property collateral, the Court is not persuaded that PNC should be prohibited from making the section 1111(b) election because the Collateral is not real property. Had Congress intended to limit the applicability of section 1111(b)(2) to secured creditors with real property collateral, it would have expressly done so.

Moreover, the value of PNC's lien is approximately 13% of the value of its total claim. Applying the common meaning of the term "inconsequential," even if the Court were to compare the value of PNC's lien with the value of its total claim, the Court cannot find that the value of PNC's lien is "not important or significant."

## **CONCLUSION**

For the foregoing reasons, the Court finds that PNC's interest in the Collateral is not "of inconsequential value" for the purposes of section 1111(b)(1)(B)(i). Accordingly, *Debtor's Motion for Determination of Inconsequential Value Pursuant to 11 U.S.C. § 1111(b)(1)(B)(i)* [Doc. 167] is DENIED.

This Order has been signed electronically.      United States Bankruptcy Court
The judge's signature and court's seal
appear at the top of the Order.